.UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
 :
TAREK EL-GHAZALY, M.D., :
 :
                Plaintiff, : **MEMORANDUM DECISION AND**
 : **ORDER**
      - against - :
 : 25-cv-3939 (BMC)
 :
JASON KIM, M.D., WAYNE WALTZER, :
M.D., JOHN FITZGERALD, M.D., LORA :
DEMPSEY, and ZHENYUE HUANG, M.D., :
 :
                Defendants. :
----------------------------------------------------------- X

**COGAN**, District Judge.

    Here are two of plaintiff's discovery demands to defendants:

    Admit that Plaintiff took the AUA inservice exam *after experiencing daily abuse and assault, unlike his peers who did not face such circumstances.*

    Describe all communications and coordination with Dr. Kim *regarding the systematic retaliation against Plaintiff, including meetings to plan responses to his complaints, coordination of false narratives, assignment of roles in gathering fabricated evidence, and strategies to discredit Plaintiff's patient safety concerns.*

(Emphasis added).

    Defendants seek a protective order relieving them of their obligations to respond to plaintiff's requests for admission and interrogatories. No wonder. The above examples typify many of plaintiff's RFAs and interrogatories. The requirement that a party respond with specific objections to each request cannot apply when so many of the RFAs and interrogatories are promulgated in such obvious bad faith, and neither defendants nor this Court need to parse through the entire set to see which, if any, are legitimate. Plaintiff's RFAs and interrogatories to all defendants are stricken in their entirety, and plaintiff is sanctioned $500 for abusing the discovery process and burdening all involved.

**BACKGROUND**

Plaintiff brings claims for discrimination and retaliation under 42 U.S.C. § 1981 and the New York State Human Rights Law, whistleblower retaliation under New York Labor Law, and "stigma plus" under 42 U.S.C. § 1983. In sum, plaintiff alleges that during his urology residency at Stony Brook University Hospital, he was subjected to discriminatory remarks based on his race and national origin, and that he was retaliated against for his complaints regarding his discriminatory treatment and for his whistleblowing regarding incidents of malpractice. All defendants have pending motions to dismiss, but discovery is ongoing.

On November 6, 2025, the current SUNY defendants (Kim, Waltzer, and Huang) filed a joint letter with plaintiff regarding the discovery dispute at issue. A few hours later, I received a letter from defendant Dempsey requesting the same relief for the same reasons as the current SUNY defendants. Defendant Fitzgerald made his request the next day.[1]

**DISCUSSION**

**I.    Legal Standard**

Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." If a party seeking discovery abuses that process, subdivision (c) provides recourse: the party from whom discovery is sought may move for a protective order, and the court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." That being said, this Court "considers itself empowered *sua sponte* to strike

---

[1] Federal Rule of Civil Procedure 26(c)(1) states that a party moving for relief from a discovery obligation "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Additionally, my Individual Practices require parties to raise discovery disputes in a joint letter following a meet and confer. Dempsey and Fitzgerald filed individual letters, and did not meet and confer with plaintiff in advance of filing those letters. Nonetheless, they request to join the current SUNY defendants' motion because the RFAs and interrogatories that they received from plaintiff "suffer from the same deficiencies." The Court agrees.

[discovery] requests that mingle conclusions and argumentation, or contain tortured and prolix questions." See Rolls Royce Indus. Power (India) Ltd. v. M.V. FRATZIS M., No. 95-cv-2630, 1996 WL 631732, at *1 (S.D.N.Y. Oct. 31, 1996) (internal quotation marks and citation omitted).

Rule 33(a)(2) states that an interrogatory "may relate to any matter that may be inquired into under Rule 26(b) ... [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Although interrogatories may be used for a variety of purposes and in a variety of ways, "the general aims are to expeditiously narrow the scope of litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize the expense." Trueman v. New York State Canal Corp., No. 10-cv-49, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010). Thus, interrogatories should not seek sweeping narrative concessions on liability. See Int'l Bus. Machines Corp. v. BGC Partners, Inc., 10-cv-128, 2013 WL 1775437, at *14 (S.D.N.Y. Apr. 25, 2013) ("interrogatories that indiscriminately sweep an entire pleading and require the responding party to provide in essence a running narrative or description of the entire case ... are inherently improper." (internal quotation marks and citation omitted)); see also Aviles v. S&P Glob., Inc., No. 17-cv-2987, 2021 WL 12332598, at *4 (S.D.N.Y. May 12, 2021) (denying party's motion to compel responses to interrogatories that were "cumbersome and, therefore, [] not conducive to simple interrogatory responses"); Rivers v. Safesite Nat. Bus. Records Mgmt. Corp., No. 94-cv-5323, 1995 WL 510034, at *1 (S.D.N.Y. Aug. 28, 1995) (striking contention interrogatories that "call[ed] for repeated detailed narratives of the events at issue").

Rule 36(a)(1) authorizes a party to serve "a written request to admit ... the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or

3

opinions about either; and (B) the genuineness of any described documents." "Unlike interrogatories, document requests, or depositions, RFAs are not a discovery device at all, 'since [they] presuppose[] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.'" Pasternak v. Dow Kim, No. 10-cv-5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (quoting 8B Wright, Miller, & Marcus, Fed. Prac. & Proc. § 2253 (3rd ed. 1998)).  Thus, RFAs should be used to "eliminat[e] the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." Id. (quoting T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., 174 F.R.D. 38, 42 (S.D.N.Y. 1997)).

  To fulfill their purposes of expediency, RFAs "should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." Carver v. Bank of New York Mellon, No. 15-cv-10180, 2018 WL 4579831, at *2 (S.D.N.Y. Sept. 25, 2018).  Moreover, RFAs should not be used "to 'harass the other side' or in the hope that a party's adversary will simply concede essential elements." River Light V, L.P. v. Lin & J Int'l, Inc., 299 F.R.D. 61, 63 (S.D.N.Y. 2014) (quoting Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007)); see also Sahu v. Union Carbide Corp., 262 F.R.D. 308, 318 (S.D.N.Y. 2009) ("[A] party cannot put the burden of discovery on the other party by obtaining all factual details by means of requests for admission.") (citation omitted)).  A court may thus relieve a party from responding to RFAs that "are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome." Republic of Turkey v. Christie's, Inc., 326 F.R.D. 394, 399 (S.D.N.Y. 2018).

## II. The RFAs and Interrogatories

I'll cut to the chase: the RFAs and interrogatories are improper and constitute an abuse of the discovery process. As Fitzgerald aptly puts it, plaintiff's requests "repeatedly embed contested liability narratives" and "'ask' [defendants] to recount them as true." Take, for example, this RFA to Kim: "Admit that Plaintiff took the AUA inservice exam after experiencing daily abuse and assault, unlike his peers who did not face such circumstances." For one, this RFA defies straightforward admission or denial. It requires Kim to admit or deny that plaintiff took the exam, that plaintiff experienced daily abuse and assault, and that plaintiff's peers did not experience daily abuse and assault – three separate propositions which likely require lengthy explanations in response. More importantly, this RFA clearly is not the result of innocent poor craftsmanship. Plaintiff is unquestionably trying to back Kim into a corner: admit, and thereby prove one of plaintiff's key allegations, or deny, and potentially undermine your credibility if later discovery proves plaintiff's narrative.

Let's now look at this interrogatory to Waltzer: "Describe all communications and coordination with Dr. Kim regarding the systematic retaliation against Plaintiff, including meetings to plan responses to his complaints, coordination of false narratives, assignment of roles in gathering fabricated evidence, and strategies to discredit Plaintiff's patient safety concerns." Plaintiff is asking Waltzer to admit to, and thus prove, essential elements of his retaliation causes of action. Why in the world would plaintiff expect Waltzer to answer this interrogatory? And how could he, given that he denies retaliating against plaintiff? I don't know which scenario I find more unacceptable: that plaintiff knew he wouldn't receive a response from Waltzer and intended only to waste his time, or that plaintiff genuinely believed he was entitled to a response from Waltzer and thought he might receive one that proved his version of events.

5

It may be that plaintiff's counsel has a style of serving ridiculous discovery requests as a means of staking out a starting position and then negotiating down to something within the realm of reasonableness. Not in this Court. If the discovery requests are outrageous, as they are here, they are sanctionable. Discovery requests have to start with "reasonable" as well as end there.

## CONCLUSION

I'm not going to go through each of plaintiff's RFAs and interrogatories to parse the barely acceptable from the categorically improper. See Stephen Amusements, Inc. v. Paramount Film Distrib. Corp., 4 Fed. R. Serv. 2d 577 (S.D.N.Y. 1961) ("[T]he proper and the improper are so commingled in the interrogatories that they impose a wholly unreasonable burden on the court to sort out that which is proper."). I'm also not going to charge defendants with this burden. Plaintiff's attorneys either do not know how to draft RFAs or interrogatories or drafted their RFAs and interrogatories with nefarious intentions.

Plaintiff's attorneys don't have to tell me which one is true, but they do have to start over. Plaintiff's RFAs and interrogatories to all defendants are stricken in their entirety with leave to re-serve new discovery, and plaintiff is sanctioned $500 for the burden he has placed on the Court. If plaintiff believes that some of his requests were acceptable, he is free to reuse them. However, I am warning him now that I will respond with harsher sanctions, including precluding him from serving discovery, if this problem arises again.

Fitzgerald has also raised objections to plaintiff's requests for production. Because I have not seen these requests, and because Fitzgerald presumably has not conferred with plaintiff regarding his objections, I will let the parties attempt to work this out amongst themselves; the same goes for the rest of the defendants. If issues persist, the parties must file a joint letter. Plaintiff, if your requests for production suffer from the same deficiencies as your RFAs and

interrogatories, I would strongly advise you to withdraw them now and serve something in good faith.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
November 8, 2025